UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

PATRICIA KENNEDY, Individually,

    Plaintiffs,

v.                                      Case No. 8:18-CV-00720-EAK-TGW

TERRACE PROPERTIES PARTNERS, LTC,,

    Defendant.
_____/

**PLAINTIFF'S MOTION FOR SANCTIONS**

    Plaintiff, by and through undersigned counsel, hereby files the instant Motion For Sanctions. As more fully explained below, Defendant and its counsel filed a Motion To Dismiss which contained false assertions and have thus frivolously and vexatiously multiplied these proceedings.

1. Plaintiff, a disabled person, commenced the instant action on March 26, 2018, pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. Section 12181, et seq. ("ADA"). Plaintiff also seeks a reasonable attorney fee, costs and litigation expenses incurred by undersigned counsel in the prosecution of this matter pursuant to 42 U.S.C. 12205.

2. Specifically, the ADA provides that: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. Section 12182(a).

3. The ADA further defines "discrimination" as "a failure to make reasonable modifications in policies, practices and procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities..." 42 U.S.C. Section 12182(b)(2)(A)(ii).

4. The Department of Justice promulgated a Regulation pursuant to 42 U.S.C. Section 12182(b)(2)(A)(ii) at 28 C.F.R. Section 36.302(e)(1) ("Regulation"). This Regulation imposes, in relevant part, the following requirements:

> **Reservations made by places of lodging**. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party -
> (i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
> (ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs[]

5. Defendant owns and operates a hotel known as the Terrace Hotel, located in Lakeland Florida. This hotel offers an online reservation system through its own website at www.terracehotel.com and through third party contracts such as booking.com (hereinafter "website" or "websites"). As such, Defendant is required to comply with the Regulation.

6. Plaintiff is wheelchair bound. Prior to the inception of this lawsuit, Plaintiff visited Defendant's websites and found that they failed to provide any information about

        accessibility as required by the Regulation. She commenced the instant action for injunctive relief for Defendant to comply with the Regulation.

7. In response thereto, Defendant filed a Motion To Dismiss Amended Complaint on May 24, 2018. DE 18. The basis of Defendant's Motion was that it had made alterations to the Website. Defendant claimed that its revisions complied with the applicable requirements of the Regulation, namely that it identify its rooms and features and provide sufficient information so that disabled persons can independently ascertain whether or not they are accessible.

8. In this regard, Defendant hired a website designer and merely inserted the word "accessible" at various places in its website. Based on the repeated insertion of this word, Defendant filed its motion to dismiss and claimed Plaintiff's claims are moot.

9. Plaintiff attempted to use Defendant's website to book a room. See Kennedy Affid., DE 19-1, para. 2. She then stayed overnight at the hotel on June 5, 2018. As a result, Plaintiff learned that Defendant's claims were false.

## MEMORANDUM OF LAW

**I.   Defendant Lied**

Defendant's Motion To Dismiss was premised on the notion that it had fixed its website to comply with the Regulation. In this regard, Defendant merely inserted the word "accessible" repeatedly throughout its website, then submitted screenshots as an exhibit to its motion, at DE 18-1. Defendant identified as "accessible": the common area restrooms, registration desk, dining room, bar/lounge, elevator, self-parking and valet and rooms. None of these claims were true.

Plaintiff's affidavit and accompanying photographs demonstrate that these claims were deliberate falsehoods. As she explains, first there is actually no way to book an "accessible" room using the website. DE 19-1. para. 2. With respect to the features at the hotel itself, reference to them as being "accessible" proved a sham. Upon visiting the hotel, Plaintiff encountered the following features as being inaccessible. There was no accessible drop off location for valet parking, so Plaintiff had to use the self parking. The self parking lot had no handicap parking spaces at all and was instead full of cracks, broken asphalt and loose gravel. A badly non-compliant ramp led the way back from this lot to the entrances. The entrances were served only by stairs, with no directional signage indicating how wheelchair patrons could even enter. After asking, Plaintiff was directed to a ramp which lacked required ends at the handrails. This was accessed only by first crossing a curb ramp, which had no level landings and was obstructed by a lamp post. The registration desk had no lowered portion for handicap use. The Terrace Grill restaurant, at the hotel, was served by steps and Plaintiff had to go all the way around the building to find her way in. The elevator was too small. The common area restroom had obstructed grab bars, amenities that were too high, and no wrapping of the sink pipes. *Id*. para. 3.

In the "accessible" guest room, commode grab bars were obstructed, the shower was not the required size, the restroom had obstructions, there were amenities that were too high, flush control was on the wrong side, sink pipes were unwrapped, shower grab bars were non-compliant, the shower had a non-compliant threshhold, and a trash can obstructed access to the door. *Id*. para. 4.

In the main part of the "accessible" guestroom, he door exiting the room also lacked sufficient latch side clearance. The doors opened into each other, thus further preventing sufficient

maneuvering. Amenities in the closet, the door peephole, door lock and thermostat were all too high. The light had an improper operating mechanism that required tight grasping, pinching and twisting of the wrist to operate. The space between the side of the bed and the adjacent wall were too narrow, as was the space between the end of the bed and the desk chair. The desk was too low to get my wheelchair underneath. Id. para. 5.None of the above features were compliant, or "accessible" as Defendant claims.

In short, Defendant's claims made on its website that its rooms and features are "accessible" are false, were made with knowledge of their falsity, and were made for the purpose of misleading this Court.

## II.    Only Exceptional Circumstances Defeat An ADA Plaintiff's Entitlement To Attorney Fees, Costs And Litigation Expenses

Although the general American Rule provides that each party bears their own attorney fees in litigation, such is not the case in Title III ADA actions.  The statute provides that, in the case of violations of section 12182 an aggrieved party is entitled to injunctive relief.  Further, if plaintiffs are the "prevailing party", their attorneys are entitled to their reasonable attorney fees, litigation expenses and costs.  42 U.S.C. Section 12205.

The purpose of fee shifting provisions in civil rights statutes is two-fold. On the one hand, it is to encourage litigation by aggrieved victims of discrimination to act as "private attorney generals". On the other hand, it serves the purpose of punishing violators and encourages voluntary compliance with the law. In Young v. New Process Steel, LP, 419 F.3d 1201, 1205 (11th Cir. 2005), the Eleventh Circuit said the following of Congress' inclusion of fee shifting provisions in civil rights statutes:

> "The reason that attorney's fees are awarded to successful plaintiffs as a matter of course where § 1988 applies is that in civil rights cases plaintiffs are "the chosen instrument of Congress." Christiansburg, 434 U.S. at 418, 98 S.Ct. at 699. Congress has decided to implement its civil rights laws by effectively deputizing individuals to act as "private attorney general[s]" while they pursue their own interests as plaintiffs. Newman v. Piggie Park Enter., Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). *Reimbursing successful plaintiffs for the cost of their attorneys out of the losing defendants' pockets serves a dual function: it provides an incentive for bringing the lawsuits, and it adds to the costs of those who violate the civil rights of others*. Id.; Christiansburg, 434 U.S. at 418-19, 98 S.Ct. at 699."

(Emphasis added.) See also. Hensley v. Eckerhart, 461 U.S. 424, 445(1983)("All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.");Texas State Teachers Assoc., v. Garland Independent School Dist., 489 U.S. 782, 791 (1989)(noting "private attorney general" doctrine served in fee shifting civil rights statute, thus entitling plaintiffs to attorney fees);  Alliance For ADA Compliance, Inc. v. Har-Gon Enterprises, Inc., No. 99-11703, slip op. at 3 (11th Cir. 2000)("The enforcement of civil rights statutes by plaintiffs as private attorneys general is an important part of the underlying policy behind the [ADA]"); Bruce v. City of Gainesville, 177 F.3d 949, 952 (11th Cir. 1999).

Significantly, the Supreme Court stated that: "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. 424, 430 (1983).   See also Albemarle Paper Co. v. Moody, 422 U.S. 405, 415 (1975)(reasoning that the strong public interest in having injunctive actions brought in order to remedy civil rights violations can only be vindicated if successful plaintiffs, acting as "private attorneys general," are awarded attorneys' fees in all but very unusual circumstances);

Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 413 (1978) (when a district court awards attorney fees to a civil rights plaintiff, it does so against a violator of the law).

Defendant filed its Motion To Dismiss in an attempt to avail itself of the mootness doctrine and thereby avoid liability. However, the mootness doctrine is only intended to succeed as a defense in rare circumstances. See Pleasureland Museum, Inc. v. Beutter, 288 F.3d 988, 998 (7th Cir. 2002)("The general rule is that voluntary cessation of a challenged practice rarely moots a federal case."); See also City News & Novelty, Inc. v. City of Waukesha, 531 U.S. 278, 284 n. 1 (2001)(same); Friends of The Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 189 (2000), because "a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior."; Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49, 66-67 (1987) ("Mootness doctrine ... protects plaintiffs from defendants who seek to evade sanction by predictable 'protestations of repentance and reform.' ")(quoting United States v. Oregon State Medical Soc., 343 U.S. 326, 333 (1952). Put another way, the standard for determining whether a defendant's voluntary cessation of illegal behavior moots a case is "stringent". Friends Of The Earth, 528 U.S. at 189.

In sum, the ADA's statutory scheme creates a presumption for the award of attorney fees, costs and litigation expenses to plaintiff's attorneys who prosecute such claims under the private attorneys general doctrine. Because this encourages the enforcement of a law in favor of a public good and punishes wrongdoers, plaintiffs' attorneys are presumptively entitled to recover their fees and out of pocket expenses "unless special circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. at 430.  Likewise, the mootness doctrine was only

designed to succeed in rare circumstances.

### III. This Court Has The Inherent Power To Impose Sanctions

It should first be said that the applicable Regulation became effective on March 15, 2012[1] and was promulgated 18 months prior to provide hotels with sufficient time to comply[2]. Defendant thus ignored this legal obligation for approximately 7 1/2 years, thus waiting until it was sued before it endeavored to comply with the law.

Defendant's conduct should be sanctioned pursuant to the inherent power of this Court and 28 U.S.C. Section 1927. It is appropriate to first show how Defendant's conduct has run afoul of Rule 11 and 28 U.S.C. Section 1927.

Fed. Civ. P. Rule 11(b)(3) requires that a party must have knowledge, information or belief that her "factual contentions have evidentiary support or ... will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P. 11(b)(3). Rule 11(c) provides that sanctions may be imposed on parties that violate Rule 11(b), and that these sanctions may be requested via a motion[3] or ordered on the court's own initiative. Fed.R.Civ.P. 11(c).[4] Additionally, any attorney who multiplies the proceedings in any case

---

[1] 28 C.F.R. Section 36.302(e)(3).

[2] A copy of the DOJ guideline explaining this point is filed at DE 19-3.

[3] The option of seeking rule 11 sanctions by motion is unavailable, as the rule first requires that the defendant be afforded 21 days notice before the motion is filed. If Plaintiff waited the required 21 days, this Court might possibly have already ruled on the fully briefed motion to dismiss. It would simply be too late.

[4] Those sanctions may be set at a level "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. Rule Civ. Proc. 11(c)(2). As Rule 11 indicates, sanctions may be appropriate where a claim is "presented for any improper purpose, such as to harass," including any claim based on "allegations and other factual contentions [lacking] evidentiary support" or unlikely to prove well-grounded after reasonable investigation.

unreasonably and vexatiously may be required by the court to pay excess costs, expenses and attorneys' fees. 28 U.S.C. § 1927. Cody v. Palmyra Park Hosp. Inc., 398 Fed.Appx. 556, 559 (11th Cir.2010). The Statute permitting the imposition of sanctions against attorneys for vexatious and unreasonable multiplication of proceedings requires a court to find an attorney has (1) multiplied proceedings, (2) in an unreasonable and vexatious manner, (3) thereby increasing the cost of the proceedings, and (4) doing so in bad faith or by intentional misconduct. In re Schaefer Salt Recovery, Inc., 542 F.3d 90, 100 (3rd Cir. 2008) The purpose is the deterrence of intentional and unnecessary delay in the proceedings. Id.

In Chambers v. NASCO, Inc., 501 U.S. 32, 50, (1991), the Supreme Court noted that "if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power" in imposing appropriate sanctions. For example, Section 1927 was inadequate because it applied only to attorneys and the lower court could go beyond the limits of this statue to sanction the party. In Chambers, neither Fed. R. Civ. P. 11, nor 28 U.S.C. Section 1927 warranted the imposition of sanctions. Nonetheless, sanctions could be imposed pursuant to the trial court's inherent power. Among the conduct the Court deemed sanctionable bad faith was the filing of false and frivolous pleadings and other delay tactics which ran up litigation costs. According to the Court:

> Federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them. In invoking the inherent power to punish conduct which abuses the judicial process, a court must exercise discretion in fashioning an appropriate sanction, which may range from dismissal of a lawsuit to an assessment of attorney's fees. Although the "American Rule" prohibits the shifting of attorney's fees in most cases, see Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 259, 95 S.Ct. 1612, 1622, 44 L.Ed.2d

---

Rules 11(b)(1), (3).

> 141, an exception allows federal courts to exercise their inherent power to assess such fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, id., at 258–259, 260, 95 S.Ct. at 1622–1623, 1623, as when the party practices a fraud upon the court, Universal Oil Products Co. v. Root Refining Co., 328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447, ***or delays or disrupts the litigation or hampers a court order's enforcement***, Hutto v. Finney, 437 U.S. 678, 689, n. 14, 98 S.Ct. 2565, 2573, n. 14, 57 L.Ed.2d 522. Pp. 2132–2133.

Chambers, 501 U.S. at 33 (emphasis added). This includes instances where a frivolous defense was filed, thus warranting the award of attorney fees for the entire litigation. Id. at 33, Fn. 8. These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers, 501 U.S. at 43, citing Link v. Wabash R. Co., 370 U.S. 626, 630–631 (1962).

Numerous courts have held that a defendant may be sanctioned for vexatiously multiplying court proceedings. See, e.g. Sherman v. Winco Fireworks, Inc., 532 F.3d 709, (8th Cir. 2008)(awarding sanctions where abusive defense multiplied proceedings vexatiously and unreasonably); MHC Inv. Co. v. Racom Corp., 323 F.3d 620, 627 (8th Cir. 2003)(meritless defense unsupported by fact or law asserted for purpose of delay sanctionable); Horst Masonry Const., Inc. v. ProControls Corp., 208 F.3d 218 (8th Cir. 2000)(assertion of meritless defense sanctionable); Bodenhamer Bldg. Corp. v. Architectural Research Corp., 989 F.2d 213, 217-18 (6th Cir. 1993)(sanctions proper against defendants who denied many allegations of complaint they knew to be true); Artco Corp. v. Lynnhaven Dry Storage Marina, Inc., 898 F.2d 953, 956 (4th Cir. 1990)(sanctions imposed for filing meritless denials); Rolls-Royce Ltd. v. GTE Valeron Corp., 800 F.2d 1101 (Fed. Cir. 1986)(filing of unfounded defenses sanctionable); Williams v. R.W. Cannon, Inc., 2008 WL 4372894 (S.D.Fla.,2008)(sanctions warranted for filing of frivolous defenses where lawyers either knew or should have known after reasonable inquiry that denials

were untrue - thus causing plaintiff additional litigation expenses); <u>Lockheed Martin Energy Systems, Inc. v. Slavin</u>, 190 F.R.D. 449 (E.D.Tenn.1999)(meritless answer sanctionable); <u>Bellagio, LLC v. Horaney</u>, 319 Fed.Appx. 652, 653-54 (9th Cir. 2009)(sanctions imposed for vexatiously and unreasonably multiplying proceedings in litigation by filing meritless defense in answer and opposition to motion for summary judgment and for acting for the sole purpose of delay). See also <u>Lamboy-Ortiz v. Ortiz-Velez</u>, 630 F.3d 228, 235 (1st Cir. 2010) (affirming sanctions for multiple instances of disruptive and vexatious trial and pre-trial filings).

The ADA's statutory enforcement scheme has two essential purposes: (1) to cause wrongdoers to fix violations; and (2) compensate the plaintiffs' bar for their time, costs and litigation expenses. This and too many other defendants opt for a strategy to give the plaintiffs the relief they seek in terms of fixing the violations, but to do so in a manner that avoids their obligation to pay the plaintiffs' attorney fees and expenses. Their delay tactics employed to achieve this goal improperly increase those same fees and expenses they seek to avoid.

In the case at bar, Defendant sought to evade liability for its discriminatory practices by inserting language into its website that its rooms and features were "accessible", then claiming compliance in its Motion To Dismiss. This was made with knowledge that these claims were false. For example, its claims that self-parking is "accessible" is outright false: there are no handicap parking spaces. There is simply no scintilla or colorable argument how defendant and its counsel could claim this feature is accessible when the complete absence of any handicap parking spaces is obvious.

Quite simply, Defendant and its counsel's representation to this Court that the website complies with the regulation is based on the insertion of the word "accessible" throughout. That

insertion necessary carries the certification that the features described are in fact accessible. Defendant and its counsel made this representation to the Court with knowledge that it was false. As a result, Plaintiff's counsel has been required to expend considerable time to respond to Defendant's frivolous motion.

### III.     Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court impose sanctions on Defendant and its attorneys for all attorney fees, costs and litigation expenses incurred in responding to its Motion To Dismiss, in drafting the instant motion, and for such other relief as is just and proper.

                                                                    Respectfully Submitted,

                                                                    THOMAS B. BACON, P.A.
                                                                    By:  /s/ Thomas B. Bacon
                                                                           Thomas B. Bacon, P.A.
                                                                           644 N. Mc Donald St.
                                                                           Mt. Dora,   FL 32757
                                                                           954-478-7811
                                                                           tbb@thomasbaconlaw.com
                                                                           Florida Bar I.D. No. 139262

### CERTIFICATE OF SERVICE

       I HEREBY CERTIFY that on this date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

Dated: June 11, 2018                                /s/ Thomas B. Bacon
                                                                    Thomas B. Bacon, Esquire